UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

INGRIT ECHEVARRIA,

                      Plaintiff,

             v.

INSIGHT MEDICAL, P.C., AL OKHRAVI,
and DR. STEVE OKHRAVI, individually,

                   Defendants.

------------------------------------------------X

| USDC SDNY |
| :--- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: April 29, 2015 |

13 Civ. 3710 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Ingrid Echevarria accused her former employer, as well as its owner and manager, of subjecting her to sexual harassment at her workplace and terminating her employment when she complained about the harassment. On June 30, 2014, after a four-day trial, a jury found that Plaintiff had proven her retaliation claims under federal and New York City law, and awarded her $50,000 in compensatory damages. (Dkt. #54). On December 22, 2014, the Court denied Defendants' post-trial motions for judgment as a matter of law or a new trial. (Dkt. #89). *Echevarria* v. *Insight Medical, P.C.*, — F. Supp. 3d —, 2014 WL 7250956 (S.D.N.Y. Dec. 22, 2014).

On January 6, 2015, the parties filed a joint letter proposing a briefing schedule for Plaintiff's motion for attorneys' fees and costs (Dkt. #90); the Court so-ordered the schedule the following day (Dkt. #91). Plaintiff filed her motion on January 23, 2015 (Dkt. #93-95); Defendants filed their opposition

papers on February 6, 2015 (Dkt. #96); and the briefing was completed with the filing of Plaintiff's reply brief on February 13, 2015 (Dkt. #97).[1]

Plaintiff seeks attorneys' fees in the amount of $95,643.25 and costs in the amount of $1,845.04. Defendants ask the Court to reduce the fee figure by 50%, challenging the reasonableness of both counsel's rates and the hours billed. For the reasons set forth in the remainder of this Opinion, the Court awards Plaintiff attorneys' fees and costs in the amount of $82,970.04.

## DISCUSSION

### A.   Applicable Law

Defendants concede that Plaintiff is a "prevailing party" in the instant litigation. (*See* Def. Fee Opp. 1). Both Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law (the "NYCHRL") authorize the award of attorneys' fees to prevailing parties. *See* 42 U.S.C. § 2000e-5(k) (allowing "a reasonable attorney's fee (including expert fees)" to prevailing parties under Title VII); N.Y.C. Admin. Code § 8-502 ("In any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees."). A district court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award. *Hensley* v. *Eckerhart,* 461 U.S. 424, 437 (1983); *see also* Fed. R. Civ. P. 54(d).

---

[1]     For convenience, the parties' submissions in connection with this motion are referred to as "Pl. Fee Br.," "Def. Fee Opp.," and "Pl. Fee Reply."

To determine the amount of attorneys' fees to which a party is entitled, a court must calculate the "presumptively reasonable fee," often (if imprecisely) referred to as the "lodestar." *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *County of Albany* (*"Arbor Hill"*), 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).[2]  This

---

[2]   The Second Circuit observed in *Arbor Hill* that "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness."  522 F.3d at 190; *cf. id.* at 190 n.4 ("While we do not purport to require future panels of this court to abandon the term — it is too well entrenched — this panel believes that it is a term whose time has come.").  Instead, district courts were instructed to calculate the "presumptively reasonable fee," "bear[ing] in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  Among other considerations, the *Arbor Hill* Court cited factors first proposed by the Fifth Circuit in *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989); they included (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.  *See Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

After *Arbor Hill* was decided, the Supreme Court, in *Perdue* v. *Kenny A. ex rel. Winn*, cast doubt on the usefulness of the *Johnson* factors as a methodology for calculating attorneys' fees, stating that the method "gave very little actual guidance to district courts."  559 U.S. 542, 551 (2010) (internal quotation marks omitted).  The Supreme Court found the lodestar method to be preferable because it "looks to the prevailing market rates in the relevant community," and because it is "objective" and "thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results."  *Id.* at 551-52 (internal quotation marks and citations omitted).  The Supreme Court also noted that its conception of the "lodestar figure" included "most, if not all, of the relevant factors constituting a reasonable attorney's fee."  *Id.* at 553 (internal quotation marks and citations omitted).

The consequent demise of *Arbor Hill* may, however, be more apparent than real.  The *Perdue* Court focused on enhancements to an attorneys' fees award applied by the district court.  Moreover, the *Arbor Hill* decision, at its core, simply instructs district courts to take the *Johnson* factors (and other factors) into account when determining the reasonable hourly rate, and then to use that reasonable hourly rate to calculate the presumptively reasonable fee.  522 F.3d at 190.  As another court in this District has recognized, "[t]his approach, though it uses different terminology, is not at odds with the Supreme Court's reasoning in *Perdue* because like the lodestar, it takes into account all the 'relevant factors' in setting a reasonable rate, and then uses that rate to

amount reflects "the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Courts calculate the presumptively reasonable fee by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. *Millea*, 658 F.3d at 166.

In reviewing a fee application, a district court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records.

---

determine the reasonable fee award." *G.B. ex rel. N.B.* v. *Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 427 n.11 (S.D.N.Y. 2012); *cf. Arbor Hill*, 522 F.3d at 189 ("What the district courts in this circuit produce is in effect not a lodestar as originally conceived, but rather a 'presumptively reasonable fee.' The focus of the district courts is no longer on calculating a reasonable fee, but rather on setting a reasonable hourly rate, taking account of all case-specific variables." (internal citation omitted)).

Perhaps more importantly, *Arbor Hill* has yet to be overruled by the Second Circuit. To the contrary, in *Millea* v. *Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011), the Court relied on both *Arbor Hill* and *Perdue* in instructing that "the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee,'" and that failure to "calculate it as a starting point is legal error." *Id.* at 166 (quoting *Arbor Hill*, 522 F.3d at 183); *accord J.S. ex rel. Z.S.* v. *Carmel Cent. Sch. Dist.*, 501 F. App'x 95, 98-99 (2d Cir. 2012) (summary order); *see also Torres* v. *Gristede's Operating Corp.*, 519 F. App'x 1, 3-4 (2d Cir. 2013) (summary order) (continuing to apply *Johnson* factors in reviewing district court's determination of reasonable hourly rate). Therefore, regardless of the terminology used, this Court has considered *Arbor Hill* and *Perdue* in resolving the instant motion.

*N.Y.S. Ass'n for Retarded Children, Inc.* v. *Carey* ("*Carey*"), 711 F.2d 1136, 1147-48 (2d Cir. 1983).

**B.     Calculating the Attorneys' Fees**

**1.     Determining the Reasonable Hourly Rates**

A reasonable hourly rate represents what "a reasonable, paying client would be willing to pay," and varies by both practice area and location.  *Arbor Hill,* 522 F.3d at 184, 192; *see also Perdue,* 559 U.S. at 552 ("a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case").[3]  A court's determination of this rate "'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,'" and may "'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'"  *Townsend* v. *Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko* v. *Clinton County of New York,* 433 F.3d 204, 209 (2d Cir. 2005)).  The Second Circuit has further suggested that courts consider

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that

---

[3]     The relevant community is the district in which the court sits.  *Farbotko* v. *Clinton County of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (citing *Polk* v. *N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

> a client might be aware that the attorney expected low
> or non-existent remuneration), and other returns (such
> as reputation, etc.) that an attorney might expect from
> the representation.

*Arbor Hill*, 522 F.3d at 184.

Plaintiff seeks attorneys' fees in the amount of $95,643.25, and costs in the amount of $1,845.04.  (Declaration of Jesse Rose ("Rose Decl.") (Dkt. #95); *id.* Ex. B; *see also* Pl. Fee Reply 9 & Ex. D).  Over a period of approximately two years, Plaintiff's counsel (i) investigated the case; (ii) drafted and filed a complaint alleging gender discrimination and retaliatory termination under federal, state, and local law; (iii) conducted discovery; (iv) participated in a court-ordered mediation program; (v) successfully opposed a defense motion for summary judgment; (vi) prepared for and successfully represented Plaintiff in a four-day jury trial; (vii) successfully opposed defense post-trial motions; and (viii) prepared the briefing for the instant application for fees.

According to the Declaration submitted by Jesse Rose, the attorney with principal responsibility for this case, the attorneys' fees figure reflects the work undertaken by three attorneys: Rose, Edward Kennedy, and Thomas Kocian. (Rose Decl. ¶¶ 1-27).  Rose — whose billings represent the lion's share of the fee figure — provides considerable information concerning his own qualifications.  (*Id.* at ¶¶ 2-14).  He is a 2008 graduate of Hofstra Law School, with extensive experience in employment law that is evidenced both in his law school endeavors (including work on the *Hofstra Labor & Employment Law Journal* and an employment trial competition) and in his professional life (including stints at several law firms specializing in labor and employment law).

6

Rose is currently principal of his own law firm, which specializes in labor and employment law matters, and is as well Of Counsel to the law firm of Phillips & Associates, which has a similar focus.  (*Id.* at ¶¶ 2-4, 9-11).  Rose has worked on literally hundreds of employment actions, frequently with no supervision and/or no assistance.  (*Id.* at ¶ 13).[4]  He seeks payment at an hourly rate of $425.

Much less information is provided to the Court about the other two attorneys seeking fees for their representation of Plaintiff.  Rose recites that Edward Kennedy is "known to [him] to be [a] very proficient and talented attorney[]" (Rose Decl. ¶ 23), who has "litigated numerous cases as lead counsel and tried several cases" (*id.*), and who is "a highly respected litigator with extensive experience" (*id.* at ¶ 26).  Significantly, however, Rose provides no detail about Kennedy's educational or experiential background to justify the $425 hourly rate Kennedy seeks.[5]  Similarly, Thomas Kocian is described as another "proficient and talented attorney[]" (*id.* at ¶ 23) with 15 years of experience, but with no detail justifying the $350 hourly rate Kocian seeks.

"A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate." *Parrish* v. *Sollecito*, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003) (collecting cases).  Rose avers

---

[4]    Plaintiff also notes in her reply brief that Rose was named a "Top 40 Under 40" labor and employment lawyer in New York, as well as a "Super Lawyer Rising Star" in labor and employment law (Pl. Fee Reply 3), but provides no substantiation for these assertions.

[5]    The parties advise the Court in their briefs that Kennedy has been practicing law for five years, but this information is not contained in the Rose Declaration.  (Pl. Fee Br. 11-12; Def. Fee Opp. 5).

that the hourly rates for him, Kennedy, and Kocian are $425, $425, and $350, respectively.  (Rose Decl. ¶¶ 25-27).  However, he provides no supporting documentation, such as sample fee agreements or affidavits from former clients.  To the contrary, Rose asserts that over 90% of his clients retain him on a contingency basis.  (*Id.* at ¶ 14).[6]  Plaintiff also suggests that the Court look to the hourly rates of opposing counsel, Aymen Aboushi and Tahanie Aboushi, who ostensibly billed Defendants at hourly rates of $425 and $350, respectively, and who moved for attorneys' fees seeking hourly rates of $350 and $300, respectively.  (Pl. Fee Br. 11; Pl. Fee Reply 3; *see also* Dkt. #69 (affirmations of Defendants' counsel in support of post-trial fee application)).  While clever, this analogy only goes so far, inasmuch as (i) the Court denied the earlier motion without addressing the reasonableness of the fees sought and (ii) counsel for Defendants did not aver that their clients had actually paid them at such rates.

Each side has cited a number of district court cases to support, or refute, the reasonableness of the rates sought by Plaintiff's counsel.  (*Compare* Pl. Fee Br. 7-12, *with* Def. Fee Opp. 4-8).  The Court has undertaken its own analysis, and concludes that, broadly speaking, the fees sought by Rose are comparable

---

[6]    There is nothing untoward about this fact, and the Court accepts Rose's statement that the clients whom he represents "typically can only afford to retain an attorney on a contingency basis."  (Rose Decl. ¶ 14).  Rose also explains that, because of the vicissitudes of employment discrimination litigation, Phillips & Associates "bears all the costs of litigation while the case is pending, and we often release the client from any obligation to pay for expenses which have been advanced if there is no recovery."  (*Id.* at ¶ 16).  For these reasons, Rose notes that he "and other civil rights lawyers in New York depend on the availability of a full 'lodestar' recovery if we do prevail."  (*Id.* at ¶ 17).

to what other courts in this District have awarded to attorneys in analogous civil rights cases. *See, e.g.*, *Abdell* v. *City of New York*, No. 05 Civ. 8453 (RJS), 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (awarding fees to attorneys for prevailing plaintiffs in civil rights action ranging from $100 to $650, where action persisted for nearly five years); *Charles* v. *City of New York*, No. 13 Civ. 3547 (PAE), 2014 WL 4384155, at *3-4 (S.D.N.Y. Sept. 4, 2014) (awarding $450 hourly rate in civil rights action to attorney with 24 years of experience); *Spencer* v. *City of New York*, No. 06 Civ. 2852 (KMW), 2013 WL 6008240, at *4-5 (S.D.N.Y. Nov. 13, 2013) (awarding $400 hourly rate in civil rights action to attorneys with 10 and 20 years of experience, respectively, finding rate to be "in line with the hourly rates set for attorneys with similar experience and backgrounds in this forum" (collecting cases)); *Greene* v. *City of New York*, No. 12 Civ. 6427 (SAS), 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (observing that "precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys [in the 10 years prior to a 2008 survey] have ranged from $250 to $600"; concluding that "the rate of $375 per hour is on par with rates charged by seasoned civil rights solo practitioners with comparable experience," for attorney with nearly 20 years of experience); *Tatum* v. *City of New York*, No. 06 Civ. 4290 (PGG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (awarding fees at hourly rates of $400 and $450 for attorneys with 10 and 23 years of experience, respectively; finding that "consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600,

and that rates for associates have ranged from $200 to $350, with average awards increasing over time" (quotation marks and citation omitted)); *see also Townsend*, 679 F.3d at 59 (affirming district court award of $350 hourly rate for attorney at small firm engaging in civil rights litigation in 2006).[7]

In light of the considerations outlined in *Arbor Hill* and *Perdue*, the Court believes that a slightly lower rate than the one sought by Rose is reasonable. While amassing a respectable background in employment law, Rose is still several years junior to many of the attorneys in the comparator cases cited by the Court.[8]  In addition, both sides have asked the Court to consider the level of success that Rose achieved, which in this case was not complete.  (*See* Pl. Fee Br. 8; Def. Fee Opp. 3-4).  While the Court will not accept Defendants' invitation to reduce the fee award by 50% to account for the mixed jury verdict

---

[7]     The Second Circuit, as well as district judges in the Southern and Eastern Districts of New York, have recognized that rates in the Southern District are generally higher than those in the Eastern District of New York.  *See generally Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 172-75 (2d Cir. 2009).  For this reason, the Court has focused on Southern District fee decisions.

[8]     In his declaration, Rose includes the December 2012 National Law Journal survey of law firm hourly billing rates.  (Rose Decl. Ex. C).  Plaintiff argues from this survey that the Court should consider that the average partner rate among the New York firms reporting that figure in 2012 was $716.25.  (Pl. Fee Br. 9-10; *but cf.* Def. Fee Opp. 8 (noting that the survey "does not account for the complexity of the litigation handled, years of experience[,] or firm overheads")).  However, this figure is not a useful basis of comparison here, nor are the law firms cited at page 10 of Plaintiff's brief.  *See Tatum*, 2010 WL 334975, at *4 (rejecting comparison to rates charged by Weil, Gotshal & Manges LLP, noting that neither attorney "work[s] at Weil, Gotshal & Manges or a comparably sized law firm[.]  Neither are bankruptcy lawyers, not to mention partners in a large firm.  The relevant standard for present purposes is what attorneys of comparable experience in civil rights litigation charge as an hourly rate."); *Reiter* v. *Metro. Transp. Auth. of State of New York*, No. 01 Civ. 2762 (GWG), 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ("[T]he fact is that the large firms listed on the [National Law Journal] survey have acquired a reputation that allows them to command high rates in the market.  Many other firms, in particular smaller firms that may be providing equally capable services, simply do not command anywhere near such rates[.]").

(*see* Def. Fee Opp. 4), it will consider a slight reduction in Rose's rate.  Finally, the Court agrees, at least in part, with Defendants' argument that the issues in the instant case were not complex.  (*See* Def. Fee Opp. 7).  Plaintiff's reply comprises a bullet-point list of various "complicated procedural and substantive arguments" (Pl. Fee Reply 4), as to which the Court has two observations:  To the extent Plaintiff is claiming that counsel had to respond to numerous motions throughout the litigation, the Court agrees, and notes that this will be taken into account in determining the reasonableness of the hours billed.  To the extent that Plaintiff is claiming that the substantive issues concerning the numerosity requirements of Title VII and the NYCHRL were particularly complex, the Court also agrees — and notes that neither side's counsel correctly presented this issue to the Court, requiring substantial additional work by the Court (and an additional conference with counsel) in connection with the post-trial motions.  These "negatives," however, detract only slightly from the very fine oral and written work done by Rose in this case. After extensive review, the Court believes that an hourly rate for Rose of $375 is reasonable.

There remains the issue of the rates for attorneys Kennedy and Kocian. Put simply, the Court has been provided with insufficient information to substantiate the rates sought by either.  Though Kennedy has one-third of the experience of Kocian, he seeks a billing rate that is substantially higher, with

scant if any justification.[9]  Based on the information provided to it, the Court will authorize rates of $250 for each attorney.  (*Cf.* Def. Fee Opp. 6 (suggesting rates of $250 for Kennedy and $200 for Kocian)).

### 2. Determining the Hours Reasonably Expended

The next step in the Court's analysis is to determine whether the hours expended by Plaintiff's counsel were reasonable.  In support of her fee application, Plaintiff has submitted a summary of time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey*, 711 F.2d at 1148.  According to these records, Rose billed 209 hours on this litigation, Kennedy billed 8 hours, and Kocian billed 4 hours.

Defendants raise a variety of challenges to the number of hours billed by Rose.[10]  As noted, Defendants seek a 50% reduction in any fees awarded, to reflect the fact that Plaintiff did not succeed on her sexual harassment claims. (Def. Fee Opp. 3-4).  However, a plaintiff's lack of success on some claims does not require the Court to reduce the lodestar amount, where the successful and unsuccessful claims were interrelated and required essentially the same proof.

---

[9]    There is a suggestion that Kennedy may have more trial experience, whereas Kocian focuses more on deposition practice.  (*See* Rose Decl. ¶¶ 23, 26-27; Pl. Fee Br. 11-12). Notably, however, Kennedy's principal work on this matter involved taking the depositions of the individual Defendants.

[10]   With one exception concerning travel time, Defendants do not challenge the 8 hours billed by Kennedy or the 4 hours billed by Kocian.  In reviewing the billing records, the Court finds that while some of the descriptions are terse, particularly as to work performed in connection with depositions, it is apparent from the remainder of the record that counsel were either taking or defending the deposition of the named witness.  The Court finds that the hours billed by the two attorneys were reasonable for the work performed, and does not reduce those hours further, with one exception: The Court reduces by one-quarter of an hour the time submitted by Kennedy, pursuant to the parties' agreement concerning the proper billing of his travel time.  (*See* Def. Fee Opp. 9; Pl. Fee Reply 5).

*Quaratino*, 166 F.3d at 425 ("Attorney's fees may be awarded for unsuccessful claims as well as successful ones, however, where they are inextricably intertwined and involve a common core of facts or are based on related legal theories." (internal quotation marks and citations omitted)); *accord Murphy* v. *Lynn*, 118 F.3d 938, 952 (2d Cir. 1997); *cf. Green* v. *Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (affirming district court decision to reduce attorneys' fees related to withdrawn claims: "Although full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined, the court retains substantial discretion to take into account the specific procedural history and facts of each case."). The Court finds that Plaintiff's harassment and retaliation claims were inextricably intertwined, and it has already considered the degree of success in setting a reasonable rate; the Court declines to reduce the fee amount further by disallowing hours validly billed by Rose on the harassment claims.[11]

Next, Defendants seek an across-the-board reduction based on what they consider to be the prevalence of "excessive time entries" throughout the fee invoice (Def. Fee Opp. 8); relatedly, Defendants suggest that certain entries are "duplicative" and "vague" (*id.* at 9-10). The Court largely disagrees. To be sure,

---

[11]    *Carroll* v. *Blinken*, 105 F.3d 79 (2d Cir. 1997), on which Defendants rely (*see* Def. Fee Opp. 3-4), is not to the contrary. In that decision, the Second Circuit vacated the district court's refusal to award fees against one of the defendants, indicating that although the plaintiffs had not recovered any damages, they had won equitable relief that was "more than strictly nominal relief," making an award of attorneys' fees appropriate. *See id.* at 81-82. The Court then sustained a $25,000 fee award (a reduction from the more than $500,000 sought by counsel) against the other defendant, finding the equitable relief obtained, though more than nominal, was "minimal." *Id.* at 82. Plaintiff here realized greater success in her litigation.

vague and/or "block-billed" time records can be insufficient to substantiate a party's claimed expenditure of time. *See Thai-Lao Lignite (Thailand) Co., Ltd.* v. *Gov't of Lao People's Dem. Repub.*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (collecting cases). However, counsel are not required to "record in great detail how each minute of [their] time was expended," but need only "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437 n.12. Thus, "'multiple entries comply with the Second Circuit's requirement of specificity,' because such entries are consistent with the *Carey* dictate that entries 'specify the date, hours expended, and nature of the work done.'" *Meriwether* v. *Coughlin*, 727 F. Supp. 823, 827 & n.5 (S.D.N.Y. 1989) (citing *Carey,* 711 F.2d at 1148); *cf. G.B. ex rel. N.B.*, 894 F. Supp. 2d at 441 ("Defendant has identified no entries where the hours billed are unreasonable, or where block billing has combined activities compensable at different rates. Therefore, the Court does not find any reduction warranted.").

The Second Circuit has also recognized the authority of district courts "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quoting *Carey*, 711 F.2d at 1146). Having reviewed the fee submission at length, the Court finds little fat that can be trimmed. The Court has identified no duplicative billing by the three attorneys; Rose, true to his affirmation, "worked primarily without assistance and performed [the] vast majority of the legal work in the case." (Rose Decl. ¶ 13).

There is as well no evidence of "churning" of the case to enhance Rose's fee; to the contrary, the Court finds that Rose used his hours efficiently, and that much was accomplished in approximately 200 hours of work. The Court is further advised that Plaintiff's counsel did not charge for any paralegal services provided (Pl. Fee Br. 12), and that "much" of the work of scheduling and information-gathering was performed by non-attorneys and "not submitted as billable time" (Pl. Fee Reply 5). The Court has reviewed the time records; it agrees with Plaintiff's counsel that work that could most efficiently be performed by non-attorneys was so performed, and was not submitted for reimbursement here.

Defendants next mount challenges to specific entries. First, they contest entries reflecting the sending and reviewing of emails; Defendants claim that these emails are either non-substantive or unrelated to the merits of the case. (Def. Fee Opp. 9). The Court has reviewed the challenged entries, which primarily involve communications with defense counsel; to the extent the subject matter of the communications was not substantive, the Court largely agrees with Plaintiff that emails were more efficient (and thus less expensive) than the preparation and mailing of letters. (Pl. Fee Reply 5). In an abundance of caution, and because of the Court's desire for additional substantiation of the entries for November 5, 2013, November 18, 2013, December 3, 2013, and June 16, 2014, the Court will reduce Rose's hours billed for sending and receiving emails by one-half of an hour.

The Court disagrees with Defendants' contention that certain entries reflect duplicative or excessive work by Rose.  (Def. Fee Opp. 10-11).  Rather, they reflect the amount of time that it took to prepare quality work product — be that pleadings, outlines for questioning of witnesses, effective addresses to the jury, or appropriately detailed written submissions to the Court.  After all, in just over 200 hours, Plaintiff's counsel took in the case, prepared the pleadings, participated in a mediation session, conducted discovery (including obtaining sanctions for discovery violations), prepared and responded to numerous pre-trial and post-trial motions, and conducted a trial.  To repeat, there is little fat to be trimmed here.

Plaintiff responds by comparing the (greater) number of hours billed by adversary counsel for trial.  (Pl. Fee Reply 6-7).  That is one metric of comparison, but the Court offers another: The Court spent considerably more time preparing for trial, and resolving the post-trial motions, than either side has claimed.  It cannot therefore find that Plaintiff's counsel's submitted time charges for the trial or the post-trial proceedings are excessive.

Finally, Defendants contest certain time entries dealing with research on retaliation, which entries they claim are "not only improper but frivolous" (Def. Fee Opp. 11), because they purportedly relate to "third party claims for retaliation" (*id.*).  While including an exhibit of a medical bill received by a third party, Defendants fail to note that the third party was in fact Plaintiff's son.  The Court accepts Plaintiff's explanation that research and communications were necessitated by Defendants' conduct in causing collection agencies to

send direct mailings to Plaintiff to obtain reimbursement of her son's medical expenses.  (Pl. Fee Reply 6).  While Plaintiff's description of events suggests an attenuated connection to the conduct that precipitated this litigation, the fact that the Complaint was almost amended to include these acts as retaliatory conduct confirms to the Court's satisfaction that the fees are properly reimbursed.

In sum, Plaintiff's attorneys were judicious in the time they expended; the *gratis* assistance provided by non-lawyers, as well as the strict division of labor among counsel, bear out this fact.  The Court also notes that the submissions and presentations of Plaintiff's counsel were of a consistently high quality; Plaintiff's counsel was on the winning side of the majority of motions decided by the Court; and Plaintiff achieved success (though not complete success) at trial.  On this basis, the Court finds that the hours expended Plaintiff's counsel in connection with this matter were reasonable, with the minimal reductions outlined in this section.[12]

## C.    Calculating Reimbursable Costs

Plaintiff claims reimbursable costs in the amount of $1,845.04.  (Pl. Fee Br. 13; Pl. Fee Reply 8).  Defendants seek substantiation of the costs claimed by Plaintiff.  (Def. Fee Opp. 12).  Rose provided a list of the expenses in Exhibit

---

[12]    Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" *Millea*, 658 F.3d at 166-67 (quoting *Perdue*, 559 U.S. at 553).  In "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* at 167 (quoting *Perdue*, 559 U.S. at 5541).  The Court sees no basis for further adjustment here.

B to his declaration, and Plaintiff provided backup for those expenses in Exhibit D to her Reply Brief.  While it might have been preferable to submit the backup documentation earlier, the Court finds that the costs of $1,845.04 have been adequately supported.

**D.    Imposition of Attorneys' Fees and Costs**

Plaintiff is entitled to attorneys' fees and costs in the amount of $82,970.04.  In reaching this figure, the Court applied the lodestar method as follows:

| **Timekeeper** | **Rate** | **Hours** | **Reasonable Fee** |
|---|---|---|---|
| Jesse Rose | $375 | 208.5 | $ 78,187.50 |
| Edward Kennedy | $250 | 7.75 | $1,937.50 |
| Thomas Kocian | $250 | 4 | $1,000.00 |

Lodestar Total: $81,125.00

Costs: $1,845.04

TOTAL AMOUNT: $82,970.04

**CONCLUSION**

For the reasons set forth herein, it is hereby ORDERED that Plaintiff is awarded attorneys' fees and costs in the amount of $82,970.04.

SO ORDERED.

Dated: April 29, 2015
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

18